

EOD
03/30/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| UNITED STATES BRASS CORP., | § | Case No. 94-40823 |
| | § | |
| Debtor. | § | |
| _____ | § | |
| ATLANTA NORTHEAST COTENANCY CO.; | § | |
| FAIRFIELD MOTEL CORP.; HASHED PATEL | § | |
| AND KASSANDAS ENTERPRISES, INC., | § | |
| JOINT VENTURE; HG-CV-TA-ERD, LLP; | § | |
| HG-MV, LLP; HUNTSVILLE MOTEL CORP., | § | Adv. No. 06-4133 |
| REDLAND CREST COTENANCY; | § | |
| RICHMOND COUNTY MOTEL CORP.; | § | |
| ROCKDALE MOTEL CORP.; SAVANNAH | § | |
| MOTEL, LLC; and STERLING NIGHTS, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| THE BRASS TRUST, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
<u>REQUEST FOR CONFIRMATION OF ARBITRATION AWARD</u>[1]**

This matter is before the Court on the *Motion to Dismiss, Objections and Original Answer to Plaintiff's Original Complaint* (the "<u>Motion</u>") filed by the Brass Trust. At a hearing on July 24, 2006, the Court *sua sponte* converted the Motion to a request for summary judgment. The primary issue presented by the parties is whether HG-CV-TA-ERD, LLP a/k/a HG-CV, LLP ("<u>HG-CV</u>") and Rockdale Motel Corporation ("<u>Rockdale</u>"), who previously submitted to binding arbitration of their claims against

---

[1] This Memorandum Opinion is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case, or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

United States Brass Corporation, Inc. ("U.S. Brass"), may now seek allowance of their claims by this Court. Having considered the Motion, the record of this case, the arguments of counsel, the evidence presented by the parties and the applicable law, the Court makes the following findings of fact and conclusions of law:

## I. JURISDICTION AND VENUE

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§1334(a) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (B) and (O). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409(a).

## II. BACKGROUND

### A. U.S. Brass files for Bankruptcy Relief

From approximately the mid-1970s through the mid-1990s, polybutylene plumbing systems ("PB Systems") were installed in homes and other buildings throughout the United States. Widespread allegations of leaking in the PB Systems eventually gave way to a great many consumer claims asserted against the manufacturers of PB Systems. U.S. Brass was the country's largest manufacturer of PB Systems. On May 23, 1994, due to the massive number of claims asserted against it, U.S. Brass commenced the main bankruptcy case ("Main Case") associated with this adversary proceeding by filing a petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §1101, *et seq.* (the "Bankruptcy Code").

The Court confirmed the Fourth Amended Plan of Reorganization proposed by U.S. Brass and its parent companies, as modified (the "Plan") by an order entered on February 24, 1998 (the "Confirmation Order"). Pursuant to the Plan, the Brass Trust was

established to assume control of certain assets of U.S. Brass and certain funds. The duties of the Brass Trust include, *inter alia*:

> (iv) to liquidate and resolve plumbing claims under the ADR; (v) to make distributions to the holders of allowed plumbing claims under the Plan, and (vi) to prepare and make available to the debtor, the proponents, any settling parties, and holders of claims periodic reports regarding the results of the Brass Trust's operations.

*Summary of the Plan, Section X(C)(5)(b). See also Plan, Article 1. (kkk)* (defining the term "plumbing claim").

Appendix I to the Plan establishes the procedures for Alternative Dispute Resolution (the "<u>ADR Procedures</u>") to which Section X(C)(5)(b)(iv) refers for the treatment of plumbing claims. As provided in Section A(3) of the Plan, entry of the Confirmation Order constituted approval of the ADR Procedures.

Section B.7 of the ADR Procedures outlines the claims resolution procedure as requiring an initial offer and exchange followed by an optional mediation or arbitration. Section B.7(a) provides that each claimant may receive the following by settlement or through arbitration:

> (a) Pursuant to the offer-exchange, mediation, and if applicable, arbitration phases of the ADR, each Claimant may receive by settlement or award one or more of the following: (i) cash payment for reimbursement of reasonable, documented, unreimbursed, out-of-pocket costs of repairing (A) Qualifying Leaks, and (B) tangible property damaged directly as a result of a Qualifying Leak, (ii) repair of a Qualifying Leak and repair or replacement (to the extent necessary) of tangible property that has been damaged as a proximate result of a Qualifying Leak, or (iii) such other treatment as may be offered by the Brass Trust and accepted by the Claimant.

If the parties do not reach a settlement or consent to arbitration, then Section B.7(b) provides that "such Claimant may receive a Cash award as specified in a Final Order Allowing such Claim in an amount to be determined . . . by the Bankruptcy Court . . . ."

3

**B. HG-CV and Rockdale Submit their Plumbing Claims to Arbitration**

Each of the above-styled Plaintiffs filed plumbing claims against U.S. Brass in the Main Case. In particular, the Plaintiffs asserted property damage relating to prefabricated motels and apartments manufactured by Cardinal Industries, Inc. ("Cardinal"). The Plaintiffs asserted that Cardinal used PB Systems manufactured and marketed by U.S. Brass in its original manufacture of the motel and apartment modules.

Two of the Plaintiffs, HG-CV and Rockdale, jointly executed an arbitration agreement with the Brass Trust pursuant to Section "E" of the ADR Procedures. David Green executed the arbitration agreement as the managing partner of HG-CV and as the president of Rockdale. In the arbitration proceeding, HG-CV and Rockdale sought a monetary award in the total amount of $1,243,551.60 for alleged damages to the Villager Lodge in Charlotte, North Carolina and the Richfield Lodge in Conyers, Georgia.

Paragraph 3 of the arbitration agreement described the nature of the parties' dispute as follows:

> At issue in this dispute is the amount, if any, owed Claimants for repair or replacement (to the extent necessary) of damages to tangible property proximately caused by plumbing leaks pursuant to the ADR requirements of [sic] Third Amended Plan of Reorganization of the United States Brass Corporation in Case No. 94-40823-S.

Paragraph 5 provided that the remedies available to the arbitrator would be limited to those contained in Section B.6 and B.7 of the ADR Procedures. Paragraph 5 also provided that any award entered for Rockdale or HG-CV would be treated as an allowed claim in the Main Case and paid as provided in the Plan.

HG-CV, Rockdale and the Brass Trust selected Thomas Blumenthal to arbitrate their dispute. They engaged in discovery, and a hearing was set for February 8 - 9, 2006

4

in Houston, Texas. However, prior to the arbitration hearing, the Brass Trust filed a *Motion to Dismiss and/or Motion to Limit Damages* (the "Motion to Dismiss") in the arbitration proceeding.

In its Motion to Dismiss, the Brass Trust argued, among other things, that HG-CV and Rockdale must prove actual, documented damages. The Brass Trust argued that HG-CV and Rockdale could not recover a monetary award based solely upon estimates of damage to repair leaks or damaged personal property. In response, HG-CV and Rockdale admitted that their claims for monetary damages were not based on actual repair costs but were derived from cost estimates of payments necessary to repair the damage to the properties at issue. Although these were not "documented, unreimbursed, out-of-pocket costs" as described in Section B.7(a)(i) of the ADR Procedures, HG-CV and Rockdale argued that they were entitled to a cash award under Section B.7(a) of the ADR Procedures.

On January 23, 2006, Arbitrator Blumenthal issued his *Order and Ruling on the Defendant's Motion to Dismiss and/or Motion to Limit Damages* (the "Arbitration Order"). Arbitrator Blumenthal ruled that HG-CV and Rockdale could not recover a cash award under Section B.7(a)(i) of the ADR Procedures based only on estimates of damage to the properties in issue. Arbitrator Blumenthal ruled that Plaintiffs HG-CV and Rockdale could not recover under Section B.7(a)(ii) of the ADR because they no longer owned the properties in issue, and the remedy of physical repair or replacement would not be applicable to them. Arbitrator Blumenthal also ruled that Section B.7(a)(iii) was inapplicable to HG-CV and Rockdale's claims.

The Arbitration Order dismissed the claims of HG-CV and Rockdale, without prejudice, as follows:

> Respondents Motion to Dismiss Claimants' Demand is granted without prejudice to Claimants resubmitting an amended Claim under AAA Commercial Rule R-6 not inconsistent with this [Arbitration Order]. Leave to submit such an amended Claim will be granted by this Arbitrator upon an appropriate request from Claimants. All further proceedings in this Arbitration however, including such a request for leave to file an amendment, are hereby stayed for a period of six months, or until the parties can obtain a ruling from the Bankruptcy Court or any court of competent jurisdiction reviewing this Order. The parties shall keep the Case Manager informed of the status of any such action seeking such relief.

HG-CV and Rockdale did not appeal the Arbitration Order or ask this Court to review the Arbitration Order. Instead, as discussed below, HG-CV, Rockdale, and several other individuals and entities filed an adversary proceeding in this Court seeking payment of their plumbing claims.

### C. The Plaintiffs File an Adversary Proceeding

On April 19, 2006, HG-CV, Rockdale, and nine other Plaintiffs initiated this adversary proceeding by filing their *Original Complaint and Notice and Demand Pursuant to Section "F" of the Alternative Dispute Resolution Procedure for the Treatment of Plumbing Claims and Demand for Jury Trial* (the "Complaint"). By the Complaint, the Plaintiffs seek a judgment (1) declaring that the Plaintiffs are holders of allowable plumbing claims against the Brass Trust, (2) awarding the Plaintiffs cash on account of their plumbing claims, (3) granting pre and post-judgment interest at the highest rates allowable by law, and (4) granting the Plaintiffs their reasonable attorneys' fees and costs of suit.

On June 5, 2006, the Brass Trust filed the Motion seeking, *inter alia*, dismissal of HG-CV and Rockdale from the Complaint. The Brass Trust also objected to the remaining Plaintiffs' claims. On pages 5 and 6 of its Motion, the Brass Trust asserted that it "does not believe that any of the Plaintiffs will be able to prove that it has suffered damages as a proximate result of a Qualifying Leak (as defined in the Plan) for which it has not already been compensated. The Brass Trust further asserted that it "believes that all of [the Plaintiffs'] claims will be of a similar, if not identical, nature to the claims asserted by HG-CV and Rockdale in the arbitration and, thus, will share the same defects."

Following detailed briefing by the parties, the Court heard the Brass Trust's request for dismissal of the Complaint on July 24, 2006. The Court, on its own motion, converted the Brass Trust's request for dismissal into a request for summary judgment under Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056.[2] The Court then invited the parties to submit supplemental briefs and set the matter for later ruling.

Both parties submitted supplemental briefs. In its supplemental brief, the Brass Trust requests summary judgment only as to the claims of HG-CV and Rockdale, arguing that they should not be permitted to collaterally attack the arbitrator's ruling. HG-CV and Rockdale argue in their various supplemental briefs that Arbitrator Blumenthal did not have subject matter jurisdiction over their request for a cash award and so did not rule on the merits of their claims. HG-CV and Rockdale further argue that they are not

---

[2] Prior to the hearing on the Motion, the Brass Trust filed a *Motion to Strike Claimants' Response to Defendant's Motion to Dismiss, Objections, and Original Answer to Plaintiff's Original Complaint* (the "Motion to Strike"). In the Motion to Strike, the Brass Trust complained that the Plaintiffs' original response to their Motion was tardy. In light of the Court's ruling on July 24, 2006, the Court will deny the Motion to Strike as moot.

7

seeking relief from this Court under Section B.7(a) of the ADR Procedures, but under Sections B.7(b) and F.1.

### III. LEGAL ANALYSIS

#### A. Summary Judgment Standard

Motions for summary judgment are authorized by Federal Rule of Civil Procedure 56, which is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the contents of its pleadings, but must demonstrate the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986) (citing FED. R. CIV. P. 56(e)).

Local District Court Rule CV-56 (made applicable to this proceeding by Local Rule of Bankruptcy Procedure 7056) provides that the party moving for summary judgment must include in its motion a "Statement of Material Facts" in a specified format. A party opposing a motion for summary judgment must file a "Statement of Genuine Issues" in response to the movant's statement of material facts, with specific references to proper summary judgment evidence indicating that a genuine issue of material fact exists. In resolving a summary judgment motion, any material facts claimed by the moving party and supported by admissible evidence are admitted by the non-

movant, unless the non-movant timely controverts such material facts with proper summary judgment evidence of its own. The Court will not engage in a comprehensive search for the existence of an undesignated genuine issue of material fact.

### B. Section B.7(b) and Section F of the ADR Procedures

The Court's docket reflects that the Main Case is not yet closed and remains in administration. When an estate is in administration, this Court retains jurisdiction to interpret and enforce its own orders. *See In re Terracor,* 86 B.R. 671, 677 (D. Utah 1988); *see also* 11 U.S.C. § 105(a); *In re Doty,* 129 B.R. 571, 586 (Bankr. N.D. Ind. 1991); *In re Rodriguez,* 252 F.3d 435 (5th Cir. 2001) (per curiam). Additionally, in this case, the Court expressly retained jurisdiction over claim disputes as well as any adversary proceedings filed after the effective date of the Plan in paragraph 26 of the Confirmation Order. Thus, this Court has jurisdiction to interpret and enforce the Confirmation Order implementing the Plan and ADR Procedures.

The Plan created the ADR Procedures to resolve all plumbing claims (as defined in the Plan) against U.S. Brass. The ADR Procedures set forth in Section C a procedure described as the "Offer Exchange Procedure" whereby the Brass Trust and claimants may negotiate the resolution of claims. Section D contains a voluntary mediation procedure. If the procedures set forth in Sections C and D fail to produce a resolution of a plumbing claim, then Section F provides a procedure for allowance by this Court. Alternatively, Section E contains a procedure described as "Optional Binding Arbitration Proceedings."

Here, HG-CV and Rockdale elected to arbitrate their claims for monetary damages against U.S. Brass. The arbitration resulted in the dismissal of their claims. Having failed to prevail before Arbitrator Blumenthal, or to appeal the Arbitration Order,

9

or to seek a clarification of Section B.7(a) from this Court, or to submit amended claims to Arbitrator Blumenthal, HG-CV and Rockdale now request this Court to allow their plumbing claims under Section F of the ADR Procedures.

However, Section B.7 of the ADR Procedures provides for an election of remedies, namely, arbitration or a trial before this Court. Section B.7 does not permit a party to try arbitration and, if it finds the arbitrator's decision unpalatable, to seek relief from this Court. Once a claimant and the Brass Trust agree to arbitration under Section E, Section B.7 provides that the plumbing claim will be determined solely through that process. Moreover, Section E.5 of the ADR Procedures provides that "[a] Plumbing Claim determined through binding arbitration proceedings shall be treated as an Allowed Claim and paid as provided in the Plan . . . . There will be no right to a trial *de novo*."

The Court concludes that the express and unambiguous terms of the ADR Procedures provide that this Court will not determine a claimant's plumbing claim if the parties have submitted the plumbing claim to binding arbitration. Here, HG-CV and Rockdale elected to submit their claims to arbitration pursuant to Section E of the ADR Procedures. To the extent HG-CV and Rockdale now seek allowance of their claims through an order from this Court under Section F of the ADR Procedures, summary judgment shall be entered for the Brass Trust.

## C. Motion to Compel Arbitration

Although the Arbitration Order contemplated that HG-CV and Rockdale could submit amended claims to Arbitrator Blumenthal under the relevant arbitration rules, HG-CV and Rockdale have not done so. The Brass Trust requests, *inter alia*, that this Court compel HG-CV and Rockdale to return to arbitration. HG-CV and Rockdale oppose the

Brass Trust's request, arguing that "the arbitration process has been completed as fully as practicable." *See Claimants' Supplemental Brief* at ¶9.

HG-CV and Rockdale assert that "any continuation of arbitration would be a waste of Claimants', the Brass Trust's, this Court's, and the Arbitrator's time and effort." *See id.* HG-CV and Rockdale admit that they do not have proof of documented, unreimbursed, out-of-pocket costs caused by qualifying leaks (as defined in the Plan), and Arbitrator Blumenthal has already ruled that they may not recover a cash award for their claims under Section B.7(a)(i) of the ADR procedures without such proof. Thus, "in this proceeding, the Claimants seek an award under **Section B.7(b)** operating through Section F.1" of the ADR Procedures. *Id.* at ¶5 (emphasis in original).

Section F of the ADR Procedures addresses the concept of "Allowance by Court Order." Section F.1 sets forth the following procedure for commencing an action seeking this Court's consideration of a plumbing claim:

> In order to commence court consideration of a Plumbing Claim, a Claimant must file with the Bankruptcy Court and serve on Trustees a statement (the "Notice and Demand") (a) indicating that the Claimant has completed to ADR (to the extent the Claimant is required to do so) *and that the Claim has not been resolved*, (b) setting out the factual and legal bases for the Claim, and (c) requesting that the Bankruptcy Court (i) allow the Claim in a specified amount or (ii) permit the Claimant to proceed to liquidate the Claim in another Court or tribunal with jurisdiction.

(Emphasis added.) In this case, however, the Brass Trust correctly points out that HG-CV and Rockdale cannot accurately represent to the Court that their claims were not resolved under the ADR Procedures. In fact, their claims were dismissed by the Arbitration Order.

Moreover, as the Court has discussed, Section B.7 of the ADR Procedures contains an election of remedies. HG-CV and Rockdale elected binding arbitration and

11

may not now seek allowance of their claims from this Court. Binding arbitration agreements are routinely enforced by federal courts. Indeed, as a general matter, the Arbitration Act requires the stay of a proceeding if the Court is satisfied that the parties have agreed in writing to arbitrate their dispute. *See* 9 U.S.C. §3; *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52 (2003) (debt-restructuring agreements executed by Alabama residents were contracts whose arbitration clauses were enforceable pursuant to the Arbitration Act). Even an unconfirmed arbitration award can have collateral estoppel (issue preclusion) and res judicata (claim preclusion) effects. *See, e.g., Viking Dynamics, Ltd. v. O'Neill (In re O'Neill)*, 260 B.R. 122, 126-27 (Bankr. E.D. Tex. 2001).

### D. Motion to Confirm the Arbitration Order

*1. Confirmation of Arbitration Awards (In General)*

As Arbitrator Blumenthal recognized in his Arbitration Order, arbitration is a matter of contract. *AT & T Tech., Inc. v. Communications Workers of America,* 475 U.S. 643, 648 (1986). Thus, the power and authority of arbitrators are "dependent on the provisions under which the arbitrators were appointed." *Brook v. Peak Int'l,* 294 F.3d 668, 672 (5th Cir. 2002). In light of the strong federal policy favoring arbitration, "[j]udicial review of an arbitration award is extraordinarily narrow." *Gulf Coast Indus. Worker's Union v. Exxon Co.,* 70 F.3d 847, 850 (5th Cir. 1995).

Here, Section E.3 of the ADR Procedures provides that any arbitration shall be conducted "in accordance with applicable law which shall be presumed to be the Federal Arbitration Act, title 9, United States Code" (the "Arbitration Act"). Section 9 of the Arbitration Act provides that:

> *If the parties in their agreement* have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall

12

> specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award ….

9 U.S.C. §9 (emphasis added). This provision does not require an arbitration agreement to explicitly state that judgment may be entered confirming an arbitration award. *See Place St. Charles v. J.A. Jones Construction Co.*, 823 F.2d 120, 124 (5th Cir. 1987). Rather, the power of a federal court to enter a judgment confirming an arbitration award "can be implied from the language and behavior of the parties." *Id.* (citations omitted).

For example, in *T & R Enterprises v. Continental Grain Co.,* 613 F.2d 1272, 1278-79 (5th Cir. 1980), the arbitration agreement stated that "the [arbitrator's] decision shall be final and binding." The Fifth Circuit reasoned this provision expressed the intent of the parties that "the issues joined and resolved in the arbitration may not be tried *de novo* in any court, state or federal." *T&R Enterprises v. Continental Grain Co.*, 613 F.2d at 1278. The Fifth Circuit further reasoned that the trial court, which had jurisdiction over the parties' claims prior to arbitration, had the power to enter a judgment on the arbitrator's award. *Id.* at 1279.

In this case, as the Court has previously discussed, the ADR Procedures expressly provide that arbitration will be binding on the parties and that the parties are not entitled to a trial *de novo* on the issues decided in the arbitration. The Arbitration Order fully and finally disposed of the claims asserted by HG-CV and Rockdale, and the Brass Trust requested confirmation of the Arbitration Order less than one year later. Further, HG-CV and Rockdale have repeatedly invoked the power of this Court -- by filing proofs of claim in the Main Case, by submitting their claims for determination pursuant to the Plan and by requesting that the Court grant them a cash award on their claims. For all the

13

foregoing reasons, the Court concludes that it has authority to consider the Brass Trust's request for confirmation of Arbitrator Blumenthal's decision to dismiss the claims asserted by HG-CV and Rockdale. *See, e.g., Sheldon v. Vermonty*, 269 F.3d 1202 (10th Cir. 2001) (confirming arbitrator's dismissal of claims).

### *2. Confirmation of the Arbitration Order*

In response to the Brass Trust's request to confirm the Arbitration Order, HG-CV and Rockdale do not argue that the Arbitration Order should be vacated.[3] Rather, they argue that Arbitrator Blumenthal did not decide the merits of their claims. They assert that Arbitrator Blumenthal merely dismissed their claims for lack of jurisdiction because "he feared that if he ruled on the merits of the Plaintiffs' claim [sic] and made a cash award, his decision would be challenged by the Brass Trust, on jurisdictional grounds, as having exceeded the authority provided to him" under the ADR Procedures. *Claimants' Supplemental Brief* at ¶4.

This argument misinterprets the Arbitration Order. Arbitrator Blumenthal determined that he could make a cash award under Section B.7(a)(i) of the ADR Procedures but that HG-CV and Rockdale could not prove that they were entitled to such an award in the absence of any "reasonable, documented, unreimbursed, out-of-pocket costs" associated with their claimed plumbing leaks. Arbitrator Blumenthal determined that Section B.7(a)(ii) of the ADR Procedures, which provides for repair of leaks and replacement of damaged property by the Brass Trust, does not permit cash awards. He also determined that Section B.7(a)(iii), which allows parties to agree to the treatment of

---

[3] Under §10 of the Arbitration Act, a court is permitted to vacate an arbitration award only if it finds that: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone a hearing, in refusing to hear evidence, or in misbehaving in some other way; or (4) the arbitrators exceeded their powers or imperfectly executed them. *See* 9 U.S.C. §10(a)(1)-(4).

14

a particular plumbing claim, did not apply to the claims of HG-CV or Rockdale. He did not find or even suggest that he was without authority to consider the merits of the claims asserted by HG-CV and Rockdale against U.S. Brass and the Brass Trust.

With respect to Arbitrator Blumenthal's authority to interpret the ADR Procedures, as a general rule, arbitrators do not have authority to interpret a plan of reorganization or related documents – that power is reserved exclusively for this Court. *See In re A.H. Robins Co. (Dalkon Shield Claimants Trust v. Reiser),* 972 F.2d 77 (4th Cir. 1992); *In re A.H. Robins Co., Inc. (Dalkon Shield Claimants Trust v. Crombie),* 221 B.R. 169 (E.D. Va., 1998). An arbitrator usurps the Court's interpretative authority if he or she "ascrib[es] any meaning to the Plan . . . or related instruments that is *neither plain on the face of the words nor pronounced by this Court." In re A.H. Robins Co. (Besag v. Dalkon Shield Claimants Trust),* 197 B.R. 590, 595 (E.D. Va. 1994) (emphasis added). An arbitrator does not, however, intrude on this Court's jurisdiction by "reading, understanding, applying, or assessing the local effect of the plain, ordinary meaning of language." *Id.*

In this case, the liquidation of plumbing claims was properly within Arbitrator Blumenthal's authority under the ADR Procedures. The burden of establishing damages is placed on claimants by, among other things, Section B.4 of the ADR Procedures. In determining whether HG-CV and Rockdale had established compensable damages, Arbitrator Blumenthal assessed the plain, ordinary meaning of the terms used in Section B.7 of the ADR Procedures. His conclusions regarding whether and when a cash award is available to claimants under Section B.7(a) were well-reasoned and do not intrude upon this Court's interpretive authority. The Court, therefore, finds and concludes that

the Arbitration Order should be confirmed and that the claims asserted by HG-CV and Rockdale against U.S. Brass and the Brass Trust should be disallowed.

## IV. CONCLUSION

For all the foregoing reasons, the Brass Trust's request for summary judgment should be granted as to Plaintiffs HG-CV and Rockdale. The Court will confirm the Arbitration Order, and the claims asserted by HG-CV and Rockdale will be dismissed from this adversary proceeding with prejudice. An order consistent with this Memorandum Opinion will be entered separately.

Signed on 4/2/2007

*Brenda T. Rhoades*    SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE